Garry, J.
Appeal from an order of the Family Court of Otsego County (Lambert, J.), entered September 27, 2012, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties’ children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2006 and 2007). In January 2012, the mother commenced this *1038 proceeding in Family Court seeking an award of sole custody on the basis that the father had not seen or supported the children since 2008. Both parties attended the initial appearance in March 2012 and requested assigned counsel. The court scheduled a pretrial conference to occur in April 2012 and advised the parties in person and in writing of the date. Upon the father’s unexplained failure to appear for the April conference, the court scheduled a fact-finding hearing and Lincoln hearing, and issued written notice to the parties, their counsel and the attorney for the children informing them that the matter was adjourned until August 10, 2012. On that date, the father again did not appear. His assigned counsel requested an adjournment, stating that the father had encountered transportation difficulties. The mother and the attorney for the children opposed the adjournment, and Family Court denied the request. Following a Lincoln hearing with the older child and a fact-finding hearing in which the mother was the sole witness, the court granted the mother’s request for sole custody and suspended the father’s right of visitation until such time as he petitioned for this relief. Rather than seeking such a remedy in Family Court, the father appeals.[1]
The father first contends that Family Court erred in declining to adjourn the hearing. The determination of whether to grant a request for an adjournment is entrusted to the sound discretion of the trial court, and it will not be disturbed unless that discretion is clearly abused (see Matter of Steven B., 6 NY3d 888, 889 [2006]). While the father lived a significant distance away, he had been advised of the hearing date more than four months before, in a notice warning that no oral requests for adjournment would be granted and that his failure to appear could be treated as a default. His previous failure to appear for the April 2012 conference had frustrated the efforts of counsel, the mother and court personnel to resolve the matter promptly, and by the time of his second failure to appear, the mother’s custody petition had been pending for over eight months. Considering the allegations that the father had previously been wholly uninvolved in the children’s lives for several years, we do not find it unreasonable to view his failure to attend two consecutive court proceedings as part of a continuing pattern. We cannot say that the court improvidently exercised its discretion in refusing to delay the matter further (see Matter of Braswell v Braswell, 80 AD3d 827, 829 [2011]; Matter of *1039 Cukerstein v Wright, 68 AD3d 1367, 1368 [2009]; Matter of Heyer v Heyer, 112 AD2d 539, 540 [1985]).
The father next contends that Family Court erred in suspending his right to visitation. As he asserts, visitation with a noncustodial parent is presumed to be in a child’s best interests and should not be denied in the absence of substantial proof that contact would be harmful to the child’s welfare (see Matter of VanBuren v Assenza, 110 AD3d 1284, 1284 [2013]; Matter of Culver v Culver, 82 AD3d 1296, 1297 [2011], appeal dismissed 16 NY3d 884 [2011], lv denied 17 NY3d 710 [2011]). Nevertheless, the Court of Appeals has recently clarified that the standard of substantial proof “should not be interpreted in such a way as to heighten the burden, of the party who opposes visitation, to rebut the presumption ... by a preponderance of the evidence” (Matter of Granger v Misercola, 21 NY3d 86, 92 [2013]). To meet this burden, the opposing party must demonstrate by sworn testimony or documentary evidence that visitation would be harmful to the child or that the noncustodial parent has forfeited the right of access (see id. at 91-92).
Here, the mother testified that she has continuously resided with the children at the same address that she shared with the father before he left the household in 2008. Thereafter, the mother has acted as the children’s sole caretaker and, although she stated that she “left the door open” for the father to visit, he made brief visits only once or twice and allegedly never provided child support.[2] The mother testified that she does not have current contact information for the father, knows nothing about his circumstances or living situation and, thus, does not wish the children to leave her home to visit with him. She expressed qualified willingness for him to visit the children at her residence, but also stated that she was “not sure” if this was advisable because of her concern that forced contact with a person who the children did not know might be harmful to them. At the conclusion of the hearing, both the attorney for the children and the mother’s counsel asked the court not to order visitation unless and until the father demonstrated an interest in developing his relationship with the children by applying for such relief.
A noncustodial parent’s failure to avail himself or herself of opportunities for visitation over a lengthy period of time is appropriately taken into account in considering whether visitation is appropriate, especially where, as here, the parent is “essentially a stranger to the child[ren]” (Matter of Cole v Comfort, *1040 63 AD3d 1234, 1236 [2009], lv denied 13 NY3d 706 [2009]; see Matter of Butler v Ewers, 78 AD3d 1667, 1667 [2010]; Matter of Dantzler v McKane, 48 AD3d 937, 938-939 [2008], lv denied 10 NY3d 709 [2008]; Matter of Bougor v Murray, 283 AD2d 695, 695-696 [2001]). Without breaching the older child’s confidentiality, we note that Family Court made searching efforts during the Lincoln hearing to ascertain the extent of her familiarity with the father, her willingness to have contact with him and whether her attitude toward him had been improperly influenced. Significantly, the record does not reveal that the father has ever petitioned for visitation, and even after the mother initiated this proceeding, he neither filed a cross petition nor provided any other affirmative indication, through his counsel or otherwise, of what form of contact he wished to have or his plan for obtaining it.
Finally, we note that Family Court’s order was, in effect, a temporary remedy that did not absolutely foreclose the father’s visitation, but instead expressly anticipated that he would initiate contact by petitioning for such relief. It is most unfortunate that, rather than availing himself of this opportunity, the father chose to bring this matter for review on appeal. In light of all of the circumstances — in particular, the dearth of evidence in the record that might have provided the court with a sound and substantial basis for a visitation order — we find that the requirement for the father to petition strikes an appropriate balance between his right to an “opportunity to establish a meaningful relationship with [the children]” and his previous failure to do so (Matter of Russell v Simmons, 88 AD3d 1080, 1081 [2011]). As Family Court’s decision is supported by a sound and substantial basis in the record, it will not be disturbed (see Matter of Joshua SS. v Amy RR., 112 AD3d 1159, 1159 [2013]; Matter of Brown v Terwilliger, 108 AD3d 1047, 1048 [2013], lv denied 22 NY3d 858 [2013]; Matter of Heyer v Heyer, 112 AD2d at 540).
Peters, EJ., Lahtinen and Rose, JJ., concur. Ordered that the order is affirmed, without costs.

. The father’s brief does not address the custody award; thus, any issues pertaining to that aspect of Family Court’s order are deemed abandoned (see Matter of Timothy N. v Gwendolyn N., 92 AD3d 1155, 1156 n [2012]).

. No testimony was elicited on this point, which was alleged in the mother’s petition.